performed stated that the... Was there to be more privacy for individuals? Yeah. And it just was not. This is more in the implementation. Is that your argument? Yes. That the implementation wasn't following the directive? Correct, because the directive... Therefore, that's no reason to deny qualified immunity to the ward. Absolutely, Your Honor. And the directive specified that the searches were to take place in private, on a sanitary chair, and the only individuals to be viewing the search were the individual conducting the search. So, yes, anyone, any individual officer who may have... So the complaints that say that wasn't the actual story, that they were subjected to the derision of nearby prisoners who were watching, that's the gripe. That's the gripe, but I would again say that the cause of action here is not against the warden for that. I think we have your point. Okay, thank you, Your Honor. I'll move on from there then. And basically, Your Honor, regarding the ongoing practice, again, I don't judge Catholic question whether or not this court has jurisdiction. I would just state that the plaintiff has alleged that there are 500 individuals who have claimed that the practice is ongoing. The document that they've attached to support those contentions to their response to our motion to dismiss, I would state should not have been considered and was actually addressed by the district court as unsure of what that document actually was. It was simply a list of names of individual prisoners who apparently filed grievances, but there were no dates attached to those names. There were no grievance identifier numbers regarding their complaints. Their complaints weren't even listed on the form. So I would say that was something that the court and this court should not consider as evidence that the practice is ongoing and that if the practice is ongoing, the wrong individuals have been sued here and the cause of action is against different individuals. All right, great. We'll hear from Ms. Miller. Good morning to the panel. My name is Racine Miller. I represent over 500 women in this manner, and MDOC, instead of filing an answer, their first response of pleading was a dispositive motion. That's largely why we only were able to attach the names and prisoner numbers because we're still to this day collecting grievances. No discovery has been had. So is that how this comes to us? You filed your complaint. They filed a motion to dismiss. Correct. And so there's been no discovery. No discovery, no motion to certify. Correct. So the motion to dismiss, was it grounded on sovereign immunity and qualified immunity eventually as it was morphed into a summary judgment? Yes, Your Honor. I do specifically recall that the defendants did raise the 11th Amendment, and we had the discussion on the record between individual and official liability. Are you satisfied with that? No, I'm not. And the reason is this. So then you maintained your action against the warden personally? Yes, Your Honor. And now, so let's talk about that. You heard the discussion. I think we are given to understand that the practice is different than the guidelines. Absolutely correct. And the complaints are about activity that is outside the guidelines established by the warden? In part. Okay, well, all right. So the part that is outside the activity established by the guidelines and the warden, you would agree that that doesn't establish liability for the warden, that she would enjoy qualified immunity from that? I can't agree with that, Your Honor, because we have provided not only the list of inmate names who have supplied grievances, but two actual affidavits from the two named plaintiffs who testified that the practice was ongoing, they were subject to the practice after it was purportedly terminated. You're talking about the practice as specified by the higher-ups? Within the policy directives. They're complaining about the practice. I'm taking it that there were violations by the guards of the policy established. So do you maintain claims by inmates about the policy as properly implemented? The policy on its face? Well, no. The policy says this, but it's really not truly the – I don't know what they could say about the warden. How is the warden implicated? Sure. That's an easier question. There you go. The warden herself has the responsibility to establish and promulgate policies, and in this case, the policy that she decided to implement in 2009, the justification that she had given was that they became aware that women may conceal contraband in their vagina. Okay. And are we not past that because that was discontinued, the chair? We are not past that because it has not been discontinued, and that's why we're seeking – The warden required a more sanitary process. After 2009, I believe in 2011, when she received grievances and she became aware that people were complaining. Okay. And, I mean, I guess just factually I'm trying to understand. So after 2011, she requires the paper or the hand sanitizer. Correct. So that's one period of time. Before then, I thought the record was that she didn't require either of those things. Originally, she did not. That's correct. The policy did not, and then it was amended, and then it was ultimately on paper abolished. Ms. Barkman said there's another written document somewhere that did require those things. Yeah, the policy was modified before it was eliminated. First it said sit on the chair and be subject to this invasive search. Then it said – It included no requirements for sanitization. Correct. That was later on implemented in the policy but not in practice. And then the policy – She's responsible for the situation where it's appropriate policy but not practiced. No. Right, and that's why I'm saying, aren't those circumstances entitle her to – she has no – she enjoys qualified immunity in those. We agree about that at least. Based on the facts, whether or not the policy was reasonably related to a legitimate penological interest. The issue of reasonableness is based only on a finding of fact. There are material disputed issues of fact here, and the jury's got to find them out before you can make the legal determination of QI. I thought Judge Borman said that these types of searches generally are permissible, but the manner of this one, namely the chair business, is the problem. Absolutely. It sounds like what you just said is challenging the first part, which went against you, that these types of things generally are permissible. If they are reasonably related to the legitimate penological interest and – You didn't cross-appeal that. We tried, but we can't. We can't until the end. We're not entitled. Okay, yeah. These things are confusing that way. It sounds like maybe you have an argument to hold Ms. Warren liable before 2011, but I think we're trying to understand, are you arguing she has any liability for after 2011? Because the policy, she changed it to be what it should be, apparently. She did change it in writing, but not in practice. You're just saying that she changed the policy, but kind of winked at what was going on. You got it. Turned her head and then authorized it indirectly. You got it. Did you allege that in your complaint? Yes. She received, personally, the grievances after the date where she allegedly terminated the practice. That's why we're here asking for the – is where she becomes personally liable. She becomes personally aware, and she signs off and says, too late in time, you can't bring it. But she knew that people were complaining that it was ongoing. So would you have us then determine whether your claim goes forward against Ms. Warren on the basis of the complaint rather than on a genuine issue of material fact determination? It depends. Are you going to look at it under 12b-6 or 56? That's what I'm asking you. What do you think we should look at? I think because of the way the defendants have couched it, you need to look at it under Rule 56, that there are disputed material issues of fact concerning the reasonableness of the policy. I mean, did you file a Rule 56, I think it's E, motion saying, you know, wait a minute, I need more discovery if we're going to make a Rule 56 decision right now? No, we did not. Okay. Yeah, it's procedurally complicated, I guess. Okay. I've got a few minutes. I'm going to get into my presentation. Thank you very much for the questions. Defendants have argued that there was no clearly established right to be free from the type of search that was here, and I believe Your Honor also indicated that, yeah, there's case law that says you can do a strip search. It's fine. However, there is a clearly established right not to be subject to humiliating strip search in full view of others. That's the gist of what's happening here. It was considered to be well-established in this circuit in 2013, that's Stoudemire v. MDOC, 705 Fed 3rd at 575. And also, notably, the Supreme Court in Belvoir v. Wolfish also indicated that it's got to be reasonably related to a legitimate penological interest. I wanted to make a quick note that the U.S. Supreme Court in Ashcroft v. Al-Kid, 131, Supreme Court, 2074 at 283, held that there's no requirement that you have a case directly on point for there to be clearly established law of a constitutional right. So one of the issues that we have here today is whether the policy complained of may be reasonably related to a legitimate penological interest and whether the manner in which the policy was carried out was reasonable. Belvoir v. Wolfish compels us to consider four particular factors. The scope, the manner in which it was conducted, the justification for initiating the policy, and the place. The spread labia slash chair portion of the strip search was added to the existing policy. The existing strip search was just bend and cough. And then in 2009, they added the spread labia portion. And their justification was because we have an awareness that women can do this with that part of their body. And I can't really believe that MDOC didn't have that awareness before 2009. 2009, coincidentally, is when the settlement of the Neal v. MVOC case occurred. And the women have alleged that this may be partially in retaliation for that. In fact, the corrections officers and the investigation done by the warden revealed that that portion of the strip search did not yield discovery of any contraband. None. It was not effective. 100% of the guards said, we can do it. Well, there are lots of ways to interpret that. Okay. It had a deterrent effect. Well, there was also a case called Turner v. Safely, which is 482 U.S. 78. It's a 1987 case, which says that the existence of an easier alternative may be evidence of unreasonableness. So Florence okayed this very procedure. Was it the Florida case? Florence. Was it the Florida case? Yes. No, U.S. Supreme Court. Prior, was it in Florida? I'm trying to recall. Yeah, it might have been in Florida. I don't remember what state. That's the way I think of cases, too. I can never remember. Your Honor, if you can direct me to that portion that you're thinking about, because I think they said, okay, strip searches are okay, even when there's no suspicion. It says an inmate must remove all of his or her clothing, bend over, blah, blah, all the ugly stuff. Women inmates must assume a suitable posture for inspection, right? All of that. That's okay. And they even said if there's no suspicion, that's okay if it's rationally or reasonably related to the legitimate interest. And in this case, number one. Obviously, we're talking about inmates here. They're blessing it as a legitimate interest. We're two steps beyond what you're arguing, that you have to go back to square one. And this is penologically established, that those kinds of searches are justified. Yes, it's okay to do a visual inspection. Well, it's detailed here in the case. Okay, and how is it detailed? I just read it. Spread the buttocks, do all that. Right, but they didn't say sit on a chair and spread your labia and expose it to other people. Okay, now that's the key part that's different. Your contention is that it's too many people watching. But that's not part of the policy, is it, counsel? The policy speaks to privacy from others viewing it. You seem confused. We just heard this. Yes, I'm recalling. I apologize. I'm recalling in my mind right now, what does the policy say, what did the grievance say, and what did the warden know? The warden had a personal awareness that these women were being exposed in front of other inmates. This argument was treated how? This argument about the personal awareness overcoming the policy that would be protective by Judge Borman. You're asking me how Judge Borman addressed that? Yeah, right. How did he view that? Did he think that that was sufficient to have her be liable personally, that she observed or was given complaints? Unfortunately, I cannot recall if, in his opinion, and I was looking at it this morning and last night, spoke to her personal knowledge. I think that's almost a red herring. That's how she gets to have liability and not qualifiably immune, is because she has some personal involvement. We keep looking for that. Her personal involvement was establishing and promulgating the policy when there was already a policy in place that served a legitimate And she made this addition, we're arguing, which was purely to harass and purely punitive in nature. And then when the policy was allegedly terminated, we're arguing it's still ongoing today. That's, I think, what the two key questions are, and I think they're jury questions. Whether, under the circumstances, a search of that invasive magnitude was reasonable under the circumstances, and whether it was performed pursuant to a legitimate interest. Did they do it because they were really looking for contraband or really needed that extra step to look for contraband, or was there something else? And I think that's the key to this case. We had that case of Williams v. City of Cleveland, a 2014 Sixth Circuit case, that specifically says the search has to be reasonably related to the legitimate end. And they said, the defendants said at oral argument, we did it because we were aware that women can conceal things in their bodies. Well, an awareness doesn't equal an articulable suspicion. The new procedure that was implemented was duplicative and gratuitous. It was unnecessary, it was humiliating, and it was a violation of the limited Fourth Amendment privacy rights that incarcerated individuals enjoy. On the facts presented, the spread labia strip search may be found to be unreasonable in the manner in which it was conducted, and may also be found to be not reasonably related to a legitimate end. Therefore, we're asking that this honorable panel affirm Judge Borman and remand back for proceedings consistent with their opinion. Okay. Thank you, Counsel. Thank you. Rebuttal? Yes, Your Honor. Just a couple of brief points. With regard to Warden Warren's knowledge of any deviations from the procedure that she had set in place for the proper conduct of strip searches after December 2011. The breaches of the policy would be one way to think of it. Yes, yes. After the policy change in 2011, Plaintiff's Counsel has stated that the warden should have been aware of complaints and grievances filed. In fact, she said the warden was aware. She said the warden was aware. Your Honor, I don't believe that the affidavits submitted in support of the plaintiff's argument by the two named plaintiffs support this contention. The plaintiff, Ab Kumbi, states that she filed a grievance in March of 2011 regarding the searches. Now, that would have been before the policy was changed. And Ms. Salem, I believe, states she filed a grievance. I don't recall the date, but it was before the change in policy. And then she stated that the chair-based search continued post-December 2011. But she did not specify in her affidavit that she specifically warned the warden or filed any sort of grievance that she was still being subject to the policy. So I would dispute the warden's knowledge at this point of any ongoing problems related to that policy. Will you go back to the 11th Amendment, the proper pleading of sovereign immunity? Yes. I mean, my recollection of this record is that the defendants did raise that at the district court level. I know we argued it in our brief on appeal. We argued that prospective relief is not available to the plaintiffs. I mean, I believe the issue has been preserved.  I believe this is a situation where the grievance process worked and the warden became aware of problems. And before this lawsuit was ever filed, she took action to fix those problems, and she did. And the wrong people have been sued here. If problems are still occurring, those complaints should be against individual officers who are obviously violating policy. Thank you, Your Honor. Thank you for your argument. You have your matter, and we will look at it carefully and issue an opinion in due course.